May it please the court, Albert Chow on behalf of the petitioner Li Cheng Cheng. Your honors, in this case this is an asylum case and as with most asylum cases the issue here is credibility. We believe that in this case though the adverse credibility finding by the board and the immigration judge was based upon cherry-picking certain facts that bolstered their adverse credibility finding while ignoring certain facts that undermine that result. We also believe that in this case the immigration judge was not an impartial adjudicator when she directed the government to introduce evidence in the middle of testimony to bolster their evidence once it was found that their evidence was insufficient and deficient. As an example of cherry-picking the board stated that the father's letter indicated that when police came to question him about his son's whereabouts he stated that he went out for work and the board said well this supports the fact that the respondent or the petitioner came here for work ignoring that the rest of the father's letter indicated that he had suffered persecution based upon his religion and just a few sentence earlier stated that he is he escaped because he wanted more freedom. Could you address some of the other inconsistencies? I thought the father's letter was very ambiguous but there were other things like the distinction of how he had gotten when and how he had gotten from China to the United States. Yes your honor and I believe that the reason why they found him found inconsistency there was because of a previous statement that he had made at the border on the I-213 and that is exactly what I was talking about when I said that I believe that that particular document was deficient because it didn't state what language that the interview was conducted in and not only that. Did you challenge or did he challenge in the prior hearings that some of the information was inaccurate that he had not understood it or what was the the basis for his claim? I mean it was very detailed information that he had gone through Holland, Peru, Guatemala, and so it wasn't like a word that was wrong or whatever. No it was the date because on the I-213 he originally stated that he left China I believe he said in January of 2016 where he testified that he actually left China much earlier in 2015 so that was where the inconsistency was and what I'm saying is. Well I thought he said told the Border Patrol that he had departed China in 2006 and went through France and Mexico but on his asylum application he had the Holland, Peru, Guatemala, and Mexico. Yes and that's what I was saying is that I was saying it you know that's why I quoted Singh v. Gonzales or this stating essentially that documents such as these which are short conclusory summary statements should not be used for an adverse credibility finding because we don't it's not a question and answer we don't know what question was asked what the answer was given. This is an officer's recitation of what he believes that the petitioner stated not exactly what he stated. But the officer also said that if he had stated that it would have been in the form. Yes but and so he was questioned on that very issue and why isn't the immigration judge permitted to credit that testimony? No the immigration judge can credit that testimony but what I'm saying is that these types of statements and that's why I said Singh v. Gonzales should not be used to support an adverse credibility finding because it's not a transcript. We're not sure exactly what the context was of the questions that were asked. Were there any follow-up questions and perhaps did he misunderstand the question or did he misspeak? Like for example on page 320 when we're looking at the actual data it says subject admitted that he entered the US illegally on about January 11, 2006 at approximately 60 hours by waiting across the Rio Grande approximately two miles east of Hidalgo, Texas port of entry a place not designated as a port of entry. I don't believe that the petitioner said all those things. That's a recitation of certain facts that the officer believed to be true. So what I'm saying is in this type of interview we're not sure exactly what he said in what context these answers were given. He may have just been mistaken. We don't know and that's and that's why I cited this particular case because in this case the officer is not giving us a Q&A. He was given the opportunity to provide further evidence and declined isn't that correct? Well your honor no he was not. In in REN v. Holder that I cited as well as the G v. Holder a petitioner must be given notice and opportunity to corroborate his claim. There was no notice given by the immigration judge in this case that he must submit certain evidence to corroborate. It's not a question of us submitting right it's his burden of proof to carry and so the the BIA said that he had time because it were several continuances and he had been questioned so he was questioned in March about his travel to the United States and then there was the proceedings were continued until July 31st to let the the Border Patrol test agent testify and so the BIA notes well he had time to provide the information but I think he he said no the the smugglers took all my information and the IJ didn't credit it which was certainly within its purview to do. Yes but he was still not given notice there was never any notice given that hey this is something that I need. Well the IJ doesn't have an obligation to say this is something that I need it's he be he was aware that there was an inconsistency because the IJ had pointed that out in March. Well your honor I believe that there is in the case that I cited G.V. Holder 751 F 3rd 1088 9th Circuit 2014 it says that notice of corroboration must be given for any riff any if the if the IJ refers in her decision to that particular to the lack of corroboration for that particular fact. And that gives the notice right? I'm sorry? That gives the notice right that there's a lack of corroboration. Well I would also submit to you your honor that that his travels from China to the United States are completely collateral to the actual claim itself. What we're talking about. Does that matter under the Real ID Act? I believe it does matter in the sense that it is something that I believe that would be considered minor simply because it whether or not he actually suffered the persecution that he's stating that he suffered. Because Congress expressly overruled our going to the heart of the asylum claim jurisprudence. Yes that's true and I'm and if if there's a lack of corroboration for that and if there's a slight inconsistency you know that that's only one minor inconsistency. There was also the IJ was concerned about inconsistencies in the timeline when he graduated and when he was working at the beer company and went through the timeline as well and since that related specifically to how he was introduced to Christianity the IJ and the BIA thought that was fairly central. Yes your honor and there was corroboration of the of his employment. There was a letter from a co-worker stating where it says he was transferred from the head company to the Chiang Mai branch in 2001. But that didn't correspond with the timeline that he had given right? It doesn't exactly correspond because he stated that he started work there in 1999 but it does state that he was transferred from the head company in 2001 which necessarily means that he worked for the head company before 2001 even though he didn't state exactly when he started. I thought he said in 99 he stopped at the beer factory and moved to selling vehicles at another company. Right and that was the company the trading company and in which the letter referred to. That was the company that he was talking about. So it was a beer company in 1999 and the head company of the beer company sold vehicles? Am I understanding that correctly? No it's that he worked for a beer factory and then he found a new job in 1999 for I guess it was called a trading company I believe in the letter and then in 2001 he was transferred from the head company to a smaller branch. And so what I'm saying is his testimony that he started work there in 1999 while not exactly corroborated by that letter? Because the IJ said according to the registry it showed that he was in elementary school at that time. Yes and that was a I believe that is that's correct and that that's a minor consistency on his education because he did state that he that he had a junior high education. But again there's no evidence that he had standing to correct a household registry. His father is the head of the household. He's just the son. There's no evidence at all that he could have gone in there and corrected that if there was a mistake on his education. I see I have 28 seconds left so I'll save that for rebuttal. Thank you. May it please the court. My name is Jesse Lorenz and I represent the Attorney General of the United States in this matter. This court should decline to disturb the board's decision because record evidence fails to compel the conclusion that Mr. Chang presented a credible claim. I'd like to start by addressing a couple of things that were brought up by petitioner in his argument. In particular his challenges to the forms the I-213 and the I-826 in particular are unfounded because DHS called the preparer of that form for he was subject to cross-examination and he explained how the form was prepared, what kind of translation service was used. In particular he testified that at that time they were using a translation service they'd call in when they needed a certain language translated. So any concerns with that form have been cured by the testimony of the Customs and Border Patrol agent. So why is that the case? Well I our argument first of all would be that there really is no need the I-213 is a reliable evidence so there really is no need to have the agent testify but because he did testify we can be assured that of the way it was prepared, the manner in which it was prepared, how the information was entered. So his concerns about you know the information being entered incorrectly are cured by the fact that this this agent testified and said you know this is how I did these things this is what he would have told me I wrote these down in my notes I kept all the files separate and then I put it put it into the form after the fact. I'm sorry he came up with notes? He didn't he did not he did not submit his notes but he said that the agent said that he kept his notes at the time of creating this document and then would have put it into the form after the fact. He didn't present the notes of the hearing? The notes he did not present no the what was presented before the immigration judge was that the form I-213 the record of deportable alien. Did he testify that he admitted that he did not remember the interview at the time because they were processing apparently four or five people per day at that point or each officer was required to process that many but he did say that he. So I'm not sure what his testimony adds I mean you say this is for my procedure this is what I normally did he couldn't even say for sure that he followed the procedure in this case right? Well he did testify that well I suppose that's a fair point your but he did testify. It's just a question about the record he doesn't say I've looked at my notes before I came into court and and they match the form right? He didn't say that. He didn't say that no. Okay he didn't say I remember the interview and I remember that this is what he said. He did not say that no. So he can't really say anything about it except that this looks like the kind of thing I do every day and this is a procedure I normally follow. Yes that's true. All right so basically that's as good as having a form. Well it it lends a little more credence to the form that's the government's position at least but that's also our position that his testimony wasn't required the form on itself is reliable. How does it help him any I mean you know so I mean these coverties on that form they don't make his asylum claim better or worse. Well whichever version you take. I think I think they do I mean if you consider that the only the major incident of harm occurred in May 2004 and he's saying he leaves it either according to the statement he said before the IJ or the statement before the Customs and Border Patrol agent he either leaves in April 2005 or January 2006. Now that's a that's a big time difference and and as part of part of this court's law is that basically the longer you stay in the country after the incident of harm the less well-founded your fear of future persecution is. So that is a that is a big difference and also there are a couple of things that may or may not have happened during that period of time. I mean basically because of the inconsistencies we don't know what happened between April 2005 and January 2006. According to his father's letter you know he leaves in April 2005 and then the police visit twice after that but maybe he's there maybe he's not we don't really know because of this. So I think it does make a huge difference. Also under the Real ID Act the agency doesn't have to rely or doesn't have to rely on matters like or it doesn't have to find inconsistencies that go to the heart of the matter and here I mean we're talking about vastly different stories. I mean basically I understand the Real ID Act but there's a difference between saying a matter something doesn't go to the heart of the matter and saying this was something that doesn't well it makes a difference at all. I mean could you know people might remember a birth date wrong. Well you know and it may be discrepancy but it may be you know it has no it doesn't if the if the discrepancy doesn't so advantage the claim somehow then then it's less likely this was a lie it's more likely that it was misunderstanding maybe misunderstanding on the part of the petitioner or perhaps you know the officer who wrote it down. Well I think it does advantage his claim because he has a letter from his father saying he left in April 2005. If he doesn't testify that he left in April 2005 then his testimony is necessarily inconsistent with his father's letter and as I said the longer he stays in China the less you know the lower his well-founded fear is it weakens his claim if he's in China for an additional 10 months also. But you mentioned that in that period there were police came around twice. Well so his father's letter claims that after he left China the police came by. After he petitioned and left China. Yeah well according to his his testimony but not according to what he said to the Customs and Border Patrol agent but according to his testimony or not his testimony yeah his testimony and his father's letter he left China in April 2005 and then the police came to his father's house twice after that. I mean and that's his his way of showing continued interest in him but if he's still in China during that period of time that is slightly undercut and then as I said the longer he remains in the country following the major incident of harm the less likely the lower his well-founded fear is. Also we have to keep in consideration when he told CBP that he had left China in January 2006 that was contemporaneous to when that happened. He's testifying you know several years later before the immigration judge and at that point he needs to cure his testimony with his father's letter. So we don't really have any incentive for him to lie to Customs and Border but then there is an incentive to lie to the immigration judge or I shouldn't say lie but you know conform his testimony with the evidence that he submitted. Do you agree with your opposing counsel that there shouldn't be great reliance placed on the household registration document? Well I would disagree with that because it is a government record that he has submitted in support of his claim and basically the the record on the bottom of it says that it was renewed or refreshed or whatever in April 2000. So that that's pretty specific that they redid the household registry in April 2000 or renewed it or it was refiled or something of that nature and it still listed him as an elementary school student. Now that... And he was 15 at the time? He's 15 at the well at that time I believe he would have been 17 or 18 but it's still it's it's it's a government record that he has presented as truthful. I mean he's presenting it in support of his own claim and it does interfere with his claim that he was graduated by that point in time and had at that point in time worked at two different jobs. I mean it doesn't say anything about those jobs and that's that he's on a second job at that point according to his own claim. But you've had enough experience to know that those household registries are often used by the folks in China for purposes other than the ones we're talking about today? Well I I can't really speak to those but in this case I mean it isn't consistent with his claim that he's been graduated and working for... But his father prepared that and and who knows what the motivation or how much care was actually taken to verify or conform that to the realities at the time? Well your honor I just I don't know in this case I don't have any access to that information what happened what his father did what his father did not do. All the more reason not to rely on that document. Well but he submitted in support of his own claim and it is important to remember that it's his burden of proof and we're talking about a totality of the circumstances test. This is one more thing that kind of goes into all the totality of the inconsistencies. I'm trying to understand the inconsistency. The form was submitted in 2004 right? The form of... made in 2000 according to the the form itself. When it was submitted was later on during the proceedings sometime probably in 2012. And at that point he would have completed elementary school right? I would have I would imagine so your honor but I mean I can't really speak to that. Well I'm just I'm not sure I understand what the inconsistency is. Well your honor the inconsistency is that he's he's saying that he graduated middle school in July 1998 and has a beer factory until June 1999. Which was illegal right? The one job was illegal because he was too young. I don't I don't I don't know anything about Chinese labor law so I'm not really sure. But the inconsistency is that he's presenting documents that... I thought he testified to that fact. That he worked as... That it was illegal that he was he was 15 and he was... I don't I don't remember that from the legal job. I think he said he graduated from middle school and then started working at a beer factory. But that's all that's all I recollect from that. Whether it was illegal or not really doesn't go to his claim anyways because he's like I said... Well it explains why they might not have disclosed the if the working was illegal. Explains why he might not be on the form. I could be incorrect your honor but I don't remember that being part of the record. I don't remember him claiming that his work at the beer factory was illegal. The IJ I think expressed skepticism that he would have been 15 and working at a beer factory. Yes. Did he respond to that? Not really and maybe that's where Judge Kaczynski's concern comes in. That but that IJ did express concern and thought that it was implausible that he'd be working at the beer factory at that time. But I don't remember that being explored in great length. Only that you know his testimony that he was working was inconsistent with his household registry and the immigration judge's belief that he shouldn't be working there at the time. Your honors I can see that I'm over my time. If I may summarize please. I think you're done. I'm sorry. I think you're done. I'm done. No more time? Okay thank you your honor. I mean you are some time but we'll forgive it. Okay can I... We won't take it out of your next case. Okay. Without credible evidence there are major shortcomings. You're done. Oh I'm sorry I thought you were allowing me to summarize. My apologies. I was promising not to take time you owe us out of your next case. Your honors just as a point the I-213 ad on itself was deficient. It did not contain the language that was used during the interview. It was only when the IJ directed government counsel to submit the I-826 that we found out what language was used and that was impermissible by the judge. She overstepped her bounds by essentially directing government counsel to file documentation to support deficient evidence. Why is that overstepping the bounds? Is there a... Have we so held or? Under 8 CFR 1003.10 the IJ shall administer oaths, receive evidence, interrogate, examine, and cross-examine witnesses. Nowhere does it says that an IJ can submit evidence. So that's your position? Yes. Is that the request? Okay I understand. Thank you. Okay the case is filed. You will stand submitted.
judges: Kozinski, Ikuta, Gettleman